I'd like to reserve three minutes, please, for the public. We won't charge you with time when we can't hear. Thank you. All right. I think the clerk heard. I'd like to reserve three minutes for rebuttal. To me, please, the court, my name is James Brink, and I'm CJA panel appointed to represent the appellant in this case, Brian Hawes. Very briefly, the appellant was a financial planner, and he was convicted pursuant to a plea agreement with the government for diverting his client's funds to his own use. The basis of his appeal before this court is whether the two sentencing enhancements imposed by the district court pursuant to the advisory sentencing guidelines were correct.       We won't charge you with time when we can't hear. Thank you. I'd like to reserve three minutes, please, for the public.    I apologize for some lengthy issue, but that the two-level enhancement is properly imposed if the offense involved, I'm quoting from the guideline itself, the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification. What the appellant did here, or the basis, the factual basis, I guess would be a better term, of the support to government's contention that the enhancement applies, is that he changed the address at the financial institution where his clients' funds were deposited. That is, Mr. Hawes, in planning for his financial needs of his clients, deposited the money in a financial institution called Fidelity in Boston. And what Mr. Hawes did is, pursuing the authority that he had over his clients' accounts, he contacted Fidelity, had their statements sent to his office, and then what he would do in order to conceal his theft of his clients' funds, he would generate a false invoice and send that to his clients. Of course, the discrepancy between the two invoices became apparent, hence the prosecution. The government argues that this change of address constitutes the use of any means of identification to produce another means of identification. That is, the government's position is that the change of address itself on the client's statements is itself a means of identification. And this argument is without merit for several reasons. First, the statute upon which the guideline is based does not include an address as a means of identification. But the statute isn't exhaustive in terms of limiting the types of things that constitute means of identification, is it? No, I mean, it's not. It doesn't purport to be all-inclusive. It does not. But I think the statute itself is illustrative of what the intent behind the statute is. And I'll get to that in a moment when I talk about, very briefly, the congressional record and the arguments made before Congress. The statute I'm quoting, of course, is Title 18, United States Code, Section 1028D7. And indeed, and I'll get to the congressional record at this point, and I quote it in my brief in Blaine, what Congress was interested in and what they were focusing on is commonplace, if I may use the word routine, identity theft. That is, I go to your mailbox, I take out your bank statement, I get your Social Security number, I go down and I get a driver's license. And I pretend I'm you. That's correct. I pretend that I'm you. I go online. I go to eBay or Yahoo or any other website. I buy everything that I want to buy as you. I stole your identity. That's not what we had here. Oh, let me go to something else. Also in the statute, there was a provision that was adopted in the second application note or the application note 7A of the sentencing guideline. And, again, you have to have produced a means of identification and produced means to manufacture, design, alter, authenticate, duplicate, or assemble. And, again, the appellant, by merely changing the address of his clients, his financial planning clients, did not engage in the production of a means of identity. But he altered something to the address. Your Honor, in the record it was stated that we had three sentencing hearings before the district court. Before the court, the appellant testified and was unrebutted by the government that under his general authority that he had with the contracts of his clients, he was able, he was entitled to go to Fidelity and change their address. He could do anything he wanted. Well, anything within reason to manage his account. He wasn't entitled to steal the money, obviously. But he was entitled to make any changes on those accounts that he deemed to be within his discretion. More important, when he changed, and this is uncontroverted before the district court, any time he affected a change of address, a confirmation of that change of address was sent to the clients. So if they opened your mail, which I assume that they did, they would see that, oh, Brian Hawes, my financial planner, changed the address to which Fidelity would send my statement. Instead of me getting it at home, my financial planner, Mr. Hawes, is getting it. So no, he really didn't assume their identity just by merely changing their address. And this court, in the United States versus Newsom, this court addressed the applicability of the identity theft enhancement. And in Newsom, very briefly, what the defendants did, they obtained personal information. There was an insider that was one of the co-conspirators in Newsom. He worked at a bank. And what he would do, he would gather personal information of bank customers, and then they would take this personal information, and they were making false identification cards and driver's licenses. Okay, and the holding in Newsom can be summarized in one sentence. That's on page 186 of the case. And that is, when a means of identification is illegally used to produce an altered duplicate means of identification, the sentencing enhancement applies. But in Newsom, they were presented with the classic identity theft fact pattern. So Newsom wasn't intending to exclude other borderline situations, which arguably this is. I mean, to my mind, this is a case of first impression. And I guess I haven't bothered as much by the definition of what goes on here in the statutory provision. Means of identification means any name or number that may be used alone or in conjunction with any other information to identify a specific individual. And I guess originally you have to use a means of identification to produce another means of identification. I guess the issue is whether they use the first name and address and bank information in order to produce or obtain another means of identification. And the definition of means of identification would seem to include the concept of name or address. Would it not? Because means of identification is a name or number that may be used alone or in conjunction with other information to identify a specific individual. So it seems to me that if we're supposed to look at this broadly, which I think we are, it might just fit, even though if you look behind it, it isn't as limited as what Congress intended. Tell me where there's a flaw in that reasoning. I think the distinction is, Your Honor, and I raise this below, is that in this case the change of address was not used to create or use the identity of the victim. This case, when he changed the address, it was a means for him to conceal his illegal activity. He didn't use their address as a means to produce an identification in order to steal their money. He didn't need to. But you're reading kind of an intent or purpose in it, and I don't think that's in the guideline. It says a means of identification, using a means of identification unlawfully to produce or obtain. All right. You're reading to, meaning as an intent element. Would you concede that the name and address that resulted, the altered name and address, was a means of identification? No, Your Honor. I will not concede that. I look at it as this court in Newsom gave several examples of illicit activities that do not constitute identity theft, for example, forging a check. If I sign somebody's name on the back of a check and I then present that check for the cash to check, yes, I've assumed that person for the purpose of cashing the check, but it's not identity theft. That's in Newsom. Well, but there are cases that say that the bank loan is a means of identification and a lease becomes a means of identification, and the cases have been pretty broad, have they not? Well, Your Honor, there's a distinction here. If I present myself to a bank, now, I'll go beyond the Third Circuit. There are other circuits that have addressed that issue, but if I pretend to be somebody else, when I go to your example, Your Honor, to borrow money from a bank, I've assumed the identity of that person for the purpose of obtaining the money. The appellant here didn't have to do that. He already had carte blanche over these client's accounts. That is, he did not have to assume their identity to steal their money. He didn't have to do it. He could have, and Your Honor, and this was argued below also, he didn't have to change their address in order to steal the money. He could have taken their money without changing their address. Now, query whether that would have constituted identity theft if he wouldn't have changed the address in order to conceal his crime. I would argue no. I believe I'm running out of time here, and if I may just make one more point and go on to another point very quickly. I would argue here that, number one, Congress did not intend a mere change of address to be identity theft. If Congress would have intended it, they would have put it in the statute. And number two, even if an address was a form of identity, which I don't believe that it is, it wasn't used here to create, assemble, or produce another means of identification. In the 50 seconds, 49 seconds that I have left, I'd like to touch on the restitution issue. It is true that the appellant entered into a plea agreement with the government and did agree to pay restitution to his victims. However, the district court was required to conduct fact findings as to whether or not the appellant had the wherewithal to make these restitution payments. That wasn't done. I didn't raise that below, so the plain error standard does apply. The ability to pay restitution is not relevant, is it? Well, Your Honor, I believe that it is, not only pursuant to the statute, but also pursuant to United States v. Holmes. The district court is required, not only by statute, but by this court, to conduct or at least engage in a cursory fact finding as to whether or not the appellant has the wherewithal and the ability to pay the restitution. The court is required to consider the financial resources of the appellant, the financial needs and earning ability of the appellant, and the appellant's dependents. This man will be 63 years old, assuming he deserves his full term of imprisonment, but the $2.4 million restitution bill, he's not going to be able to pay that. And so the court should have been, at minimum, should have engaged in fact finding to fashion a proper restitution order. But didn't he agree with the amount of restitution during his recent hearing? He agreed. He made contrite statements that he wanted to help out his victims, and then he even agreed with the exception of one victim as to the amount. That's correct, Your Honor. He agreed with the amount. We had, and the record is very clear, we had, I believe, three different resentencing hearings on this issue of the restitution because of the guideline cut off for the extra two points. But yes, Your Honor, he agreed on the amount, and I think that even if he agrees on the amount of restitution, I think the court still was required to make a finding whether he could pay that amount, notwithstanding his agreement that that could be the proper amount. You're saying, then, the court committed plain error by accepting his own agreement. No, Your Honor, I think the court committed plain error by not determining whether this appellant could pay that money back. Mr. Brink, I have one more point. Yes, Your Honor. If the misidentification or the identification enhancement is dropped from the case, it would change the sentencing range from 57—it would change it from 70 to 87 months. That's the range the district court talked about, and it would be down to 57 to 71 months. As I calculated, there's a difference, therefore, of five months, which you're talking about, as to that enhancement. Well, Your Honor, we're hoping that if this court does remand, that we could convince the district court to sentence him at the bottom range of the guidelines. So the way we've calculated it— After Booker, there's no need for the court to sentence within the guidelines. Well, what our intention would be, Your Honor, is that there's been some time since the appellant has been sentenced or in prison pursuant to the sentence, and we would ask—sometimes time is a way of healing, and our objective would be before the district court on a remand is to request the court to sentence him on the bottom end of the guidelines. We calculated that would be almost a 12-month difference. Yeah, but this man built so many people. You read through the sentencing report, and $300,000 in some cases, $50,000 in others. Isn't the sentence itself reasonable without regard to the guidelines computation? Your Honor, there was a lot of things that did happen below, and we're still, unfortunately, litigating it. If it gets remanded, if the matter is remanded, we'll re-litigate the same issue, and that's whether or not the victims would be fully compensated from a collateral source. That was brought up at one of the resentencing hearings before the district court, and we're in a unique situation here because counsel for the government was also counsel at the proceedings below, and so he has a unique perspective on the factual matters that led up to where we are today. But since it's been so long, several years now, what we're hoping on remand, we can convince the court that his victims— and some of these victims are truly tragic, and I'm not here to sell that, and they were truly tragic. But our hope is that they will be fully compensated from a collateral source, and they will be able to get on with their life. So that's what we're hoping for on remand. All right. We'll give you a rebuttal. Thank you. May it please the court? My name is Michael Ivory. I'm an assistant U.S. attorney, and I'm from Pittsburgh. Good morning, Your Honors. I'd like to talk first briefly about the issue of restitution in this case. At the third and last sentencing hearing, we advised the district court that we had resolved the monetary amounts due each and every victim, save one, what was due and owing from Mr. Haas in terms of restitution. I think under those factors, the district court was not required to make specific factual findings concerning an ability to pay restitution based upon the party's agreement. What the district court did was honor the agreement that we reached. That's clearly in the record, and the citations are contained within my brief. In addressing the issue of the identity theft enhancement. Since when is an address on an identification? It's on my driver's license, Your Honor. It has my name and my address. It has your name, but would it be effective if it just had an address? I think you have to take the name and consider it in conjunction with the additional information as you're required to do so under the statute and under the guidelines. So it's my name coupled with my address. As I pointed out in my brief, you need a name and an address to properly mail something unless you're sending a letter to Santa Claus at the North Pole or the President of the White House. What had happened in this case... If you have two addresses, do you have two identities? You have alternate legitimate identities, I would say so. But the means of identification, according to this court, is any name or number that may be used alone or in conjunction with any other information to identify a specific individual. That's what a name and an address do. I took the position at the sentencing hearing, and I'm taking the position before the court, that the bogus account statements were a means of identification, a means of identification by which fidelity investors could identify their clients. I'm still bothered by this idea of an address. A Social Security number, of course, is limited to one individual. That's correct. And your driver's license has a number that's limited to one individual. But an address is not limited to one individual. You could have an address in the condo building here on 5th Avenue, for example, and there might be 20, 30, 40 people in there. Or an address at an office, for example, on my diary, suite 4000. Whenever I get a letter from this court addressed to me at my office, there are other people who work there, but it is a means. My name and my address are a means of identification. And I'm concerned about making the identification an address. If you use that, 52 or 7th and Grant Street would be an address. Is that you? No, it's not me, but it has to be coupled with my name and other identifying information. And the term other identifying information is broadly construed because what the guideline is concerned with is the corruption of identification within fraud schemes, which is what we had in this case. What's the first means of identification that's unlawfully used to produce? What do you contend is the first? Well, the information contains a number of instances where Mr. Haas either got online, used a client's social security number, a personal identification number that was testified to at one of the sentencing hearings by Special Agent Welsh, or he just used a regular old cardboard change of address form. And what he did is he used any of those identifiers, all of which are recognized under the statutes as a means of identification, contacted Fidelity, and he did so without the knowledge or authorization of the clients and said, I want my statement mailed to this address, which just happened to have been Mr. Haas's office address. So he used the initial name and address of the person or their account number? Account number, social security number, personal identification number, password. That is contained both within the transcripts of the different sentencing hearings as well as reflected in several paragraphs contained within the information. I'm wondering whether there is an ambiguity here because your colleague used the concept of to produce as a purposeful or an intentional concept, that is using this means so as and for the purpose of producing or obtaining any other means of identification. He clearly initiated that whenever he notified by whatever means he did. Fidelity, that I want this address changed. I am a client of Brian Haas. I want my address changed. I want my account statements sent to Brian Haas's office. It's not like he was sitting in his attic with a little photocopier and a straight-edge razor blade changing names and addresses and pasting and cutting, but he did initiate the change in the production, and I think that that would be sufficient under the guideline for the enhancement to apply because when we're talking about, and I believe that you pointed this out, Judge Rendell, in your question to Mr. Brink, that to produce is a broadly construed concept, and that's what this Court did recognize in Newsom. Well, if we find this ambiguous, if we find it uncertain as to whether we should include this kind of a new change of address as falling within this, shouldn't we then look to what Congress intended and find that this really isn't the I'm using a driver's license so as to produce a Social Security card or to produce something else, which is the identity theft classic picture? Well, as we all know in this day and age, identity theft is an organic crime. I mean there are so many ways to co-opt and corrupt people's identifications. Yeah, but he was duping. He was trying to hide his woman. He was trying to deceive and trying to get away with something, so he was just trying to conceal. Absolutely. It was a concealment, an act of concealment, not an act of I'm stealing your identity so that I can do something with it. But he altered his victims' identities in the course of concealing from them that he was fleecing them. Yeah, but there's no alteration anticipated in the enhancement. It's the taking of one's identity, not an alteration to conceal. Well, the Newsom test says that the enhancement applies when a means of identification is illegally used to produce an altered duplicate means of identification. I think that the new account statement, the bogus account statements, I'll refer to them, are altered duplicate means of identification. I mean they're in the names of real people. It's just the wrong address. And the reason why they're in the wrong address is because their financial advisor is ripping them off and hiding that back from them, and it's part and parcel of the scheme to defraud, or the schemes to defraud. Where does this all fit in the sentencing process itself? And Judge Wise alluded to this. We review for reasonableness. Now, in the course of our analysis under Gunter, we look at the guidelines to see if they were properly applied. If we find that this was a questionable application, what do we do? Well, I think that some of the points that Judge Wise mentioned is the number of victims that were involved in this factor. The fact that he stole $350,000 from his own mother. The fact that he stole $87,500 from a woman who was suffering from Alzheimer's disease to pay back the mother after the mother found out that her son had ripped him off. I mean, the fact that this scheme to defraud lasted 15 years. So that ultimately the sentence was reasonable as far as we're concerned, but then why do we even go through the concept of looking at the guidelines to see if it was properly applied in the first place? Well, under Gunter, but under Cooper, the starting point, and under Booker, the starting point is properly calculated advisory guideline range. I think it was done in this case. What if it was improperly calculated? Then does that preempt or overtake our bottom line reasonableness review? I should go back and look at some of our recent opinions and see if we've specifically spoken to that. That's a very good question to which I do not have an answer. That sounds like a perfect NPO. I mean, I can only tell you that I thought he got off pretty light at 76 months. And having to make full restitution. I mean, you know, just the harm that was caused by this man was incalculable. Well, I think the record shows that, but yet the enhancement here could have led to an increase. This is a case of first impressions, not for us, on these types of factors. On these types of factors. Although I would note that in preparing for the argument, last night I found an unreported 11th Circuit case where they said that a phone number is a means of identification for purposes of the identity theft. I wonder if you Google a specific address, what comes up. I'm not taking judicial notice or deciding we should all do that. I'll do it during lunch today. But I think a phone number probably is more specific. Right. Because of the problem alluded to, that a condo with so many. That's correct. But, again, these were people who had account statements on a number of occasions mailed to their own homes. You know, it was an address of their choosing. And Mr. Hawes, by engaging in this act, deprived them of that, I don't want to say right, but of that ability to have their information sent to a place where they were choosing, of their own choice. How accurate must the address be? Could we say Pittsburgh is an address? Pittsburgh's a place. I mean, I think it would have to be. Again, it would have to be. And 7th and Grant is not a place? It's a location. But Suite 4000, or Room 325, 7th and Grant Street, U.S. Post Office and Courthouse, I think would probably satisfy the dictates of Newsom as well as the identity theft. Again, I think that the overall reasonableness of the sentence cannot be assailed. I clearly think that the vulnerable victim enhancement was applied in this case. What was going on was that, again, Mr. Hawes' parents had given him $350,000 to invest. He did not. Mr. Hawes' father died. Mrs. Hawes found out about it. One of Mr. Hawes' victim's clients was a woman named Dorothy McKinney. Mr. Hawes depleted her account, her annuity, to pay off his mother. He knew that she had Alzheimer's. Clearly, she was in no position to protect herself, and I think for those reasons that the vulnerable victim enhancement did apply. And if the court has no additional questions. What was the sentence that was given out? It was 76 months. 76 months. And if there are no additional questions, thank you very much. Thank you. Mr. Brink. Thank you, Judge. Very quickly, I want to point to a part of the statement in the government's brief. I think this sums up the government's position. He reiterated it on his argument that he is regarding the account statements themselves as the identity or the means of identification. The original means of identification used to produce? He's using the altered statement. The fact that they changed the address, okay, which resulted in a statement from Fidelity sent to the appellant, is itself the altered means of identification that makes this guideline provision applicable. But as I was writing and I had my hand down, one of the judges asked a question, what purpose would this statement itself have from Fidelity with a different change of address? Could you take that statement to the bank and borrow money with that statement? Could I take that statement down to the Department of Motor Vehicles to get a driver's license, Social Security Administration office to get a Social Security card? No. You can't accomplish any of those objectives with the mere statement with the change of address because it's not the means of identity. But Congress didn't add a clause on the definition so as to enable someone to take the identity or so as to enable. They left it a very broad using something to produce something without indicating that there had to be that ability to then act upon it as well. Well, I think this court in Newsom said you have to produce or assemble another means of identification. I think a common sense definition of means of identification would be analogous to what I just said. I can't pull out my name on it and use that as a means of identification, whereas I can pull out my driver's license or my bar ID card and I can use that as an identifier of me as James Frank. You can't do that with this altered statement from Fidelity. Judge Wise pointed out something else that I think is important. What happens if there are 50 people living in a group home with the same address? You have 50 people sharing that address. Well, how can 50 individual people share what the government regarded as a means of identity or a means of identification when a means of identification is supposed to be unique to each individual person? And there are probably many instances of that. An address itself, standing alone, is not a means of identification. In the 25 seconds that I have, the government touched on the vulnerable victim enhancement, which I was not able to raise in my first at-bat. I'd like to point out that I concede that this is a sad case. The appellant did some bad things to some pretty sad people. And I think the record is pretty complete in what he did. But, nevertheless, this court requires the district court to make certain findings of fact, pursuant to the U.S. v. INO. And in the U.S. v. INO, the district court had to find that there was a nexus between the vulnerability of the victims and the ability of the defendant to commit his crime. That wasn't done. All that the judge said, and I know Mr. Ivory, in his brief, he relisted all the facts that he raised below, almost as if he's asking his court to make the findings of fact instead of the district court. Well, that's not the way, in my humble opinion, it should be done. The district court is obligated to make these findings of fact. The district court did not, and therefore should be remanded for that finding also. Thank you very much. Thank you, counsel. The case is well argued. We'll take it under advisement. And the court is going to take a 5-minute break before calling our last case for the morning.